```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
HALLMARK AVIATION LIMITED,          :
                                    :
                    Plaintiff,      :
                                    :
     -against-                      :
                                    :
AWAS AVIATION SERVICES, INC.,       :
     formerly doing business as     :
PEGASUS AVIATION FINANCE CO.        :
                                    :
                    Defendant.      :
----------------------------------- X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 30, 2013
```

No. 12 Civ. 7688 (JFK)
**OPINION & ORDER**

APPEARANCES

FOR PLAINTIFF HALLMARK AVIATION LIMITED:
    Michael O. Adelman
    DRINKER BIDDLE & REATH, LLP

FOR DEFENDANT AWAS AVIATION SERVICES, INC.:
    James H. Neale
    FULBRIGHT & JAWORSKI L.L.P.

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant AWAS Aviation Services, Inc.'s motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Hallmark Aviation Limited claims that it is owed a broker's commission for introducing Defendant's alleged predecessor corporation, Pegasus Aviation Finance Co., to a third party in connection with an airplane purchase. Briefly stated, Defendant argues that the terms of the contract between the parties bar Plaintiff's claims, and also that the complaint lacks facts

showing that Defendant succeeded Pegasus or assumed its liabilities.

For the reasons that follow, Defendant's motion is denied, except that count two of the complaint, which asserts a duplicative cause of action for breach of the implied covenant of good faith and fair dealing, is dismissed with prejudice.

## I.   Background

Plaintiff Hallmark Aviation Limited ("Plaintiff" or "Hallmark") is a Maryland corporation with its principal place of business in Maryland.  Defendant AWAS Aviation Services, Inc. ("Defendant" or "AWAS") is a New York corporation with its principal place of business here.  Plaintiff alleges that AWAS was formerly known as Pegasus Aviation Finance Co. ("Pegasus").[1] (Compl. ¶¶ 2-3.)

Plaintiff is in the business of brokering the purchase and sale of airplanes.  Plaintiff alleges that it brokered an agreement between one of its clients, SWIRU Holding AG ("Swiru"), and Defendant.  Defendant (as Pegasus) had previously entered into a purchase agreement with Boeing to purchase a 787 Dreamliner airplane (the "Dreamliner"), and was asked by

---

[1] As discussed below, the parties dispute whether Pegasus has been subsumed into AWAS or is instead a distinct subsidiary, in which case AWAS is not necessarily liable for Pegasus's contractual obligations. For clarity, this Opinion generally refers to the moving party as "Defendant" except where the distinction between AWAS and Pegasus is uncontroverted or particularly significant.

Plaintiff if it wanted to sell its "delivery position" — that is, assign its right to buy the Dreamliner to Swiru. Plaintiff claims that as a result of this introduction, Defendant entered into a letter agreement to sell the plane to Swiru on October 6, 2006. As a consequence of Plaintiff making that introduction, Plaintiff and Defendant executed a commission agreement on October 30, 2006 (the "Agreement"). The Agreement directs Defendant to pay Plaintiff a commission of 0.75% of the sale price paid by Swiru, payable in two installments. The first installment, which AWAS paid in November 2007, was due upon execution of a final purchase agreement between Defendant and Swiru, and receipt by Defendant of Swiru's security deposit. The second installment was to be due upon delivery of the Dreamliner to Swiru. (Compl. ¶¶ 8-18.)

After Boeing struggled with delays in manufacturing Dreamliners, Swiru decided not to purchase the Dreamliner and attempted to cancel its purchase agreement with Defendant. Plaintiff alleges that Defendant refused to release Swiru from that contract without its anticipated profit of $17 million. Plaintiff claims that Defendant decided to cancel the Swiru agreement but (1) retained Swiru's $10 million security deposit; and (2) "simultaneously entered into a second aircraft purchase transaction with Boeing to provide AWAS with, at minimum, an

additional $7 million in profit to satisfy the original anticipated profit of $17 million." (Compl. ¶ 28.)  Defendant did this by making a deal with Swiru for different aircraft in lieu of the delayed Dreamliner. See Pl. Opp. at 2 ("Although SWIRU had declined to purchase the Boeing 787 due to the delays at Boeing, AWAS conditioned its agreement to cancel the purchase agreement upon SWIRU's entry into a restructured transaction for other Boeing aircraft."); Oral Arg. Tr. at 6 (counsel for Defendant acknowledging that "[l]ater there were aircraft that were sold to Swiru under a separate transaction"); id. at 8. Plaintiff argues that Defendant structured its dealings with Swiru in this way to avoid the second commission payment to Plaintiff, since the Agreement conditioned that payment upon Swiru's receipt of the Dreamliner, which never happened. (Compl. ¶¶ 25–29.)

Plaintiff asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[2]  It seeks damages of at least $369,375, plus interest, fees, costs, and expenses.

In moving to dismiss the action, Defendant argues that the breach of contract claims are barred by the terms of the Agreement.  It also contends that the unjust enrichment claim is

---

[2] Plaintiff has withdrawn its claim of tortious interference with existing business relations. (Pl. Opp. at 3 n.2; Oral Arg. Tr. at 13.)

barred at law by the existence of an express contract. Defendant further argues that Plaintiff has not sufficiently supported its claim that AWAS was formerly known as Pegasus or assumed its liabilities. Substantively, Defendant asserts that because Swiru cancelled its purchase agreement with Pegasus and never paid in full for the Dreamliner, the terms of the Agreement with Plaintiff relieve Pegasus of the obligation to make the second and final commission payment to Plaintiff.

## II. Discussion

### A. 12(b)(6) Legal Standard

On review of a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the plaintiff's allegations of fact as true, and draw all reasonable inferences in the plaintiff's favor. See Ganino v. Citizens Util. Co., 228 F.3d 154, 161 (2d Cir. 2000); Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999). To survive a 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The issue on a 12(b)(6) motion to dismiss is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claim. The court's task is therefore to

determine "the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

Review of a motion for failure to state a claim "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)).  Therefore, a court must either exclude evidentiary materials that are extrinsic to the complaint, or convert the 12(b)(6) motion into a summary judgment motion under Rule 56. See Fed. R. Civ. P. 12(d); Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000).  Conversion to a summary judgment motion is not appropriate unless the parties have had "the opportunity to conduct appropriate discovery and submit additional supporting materials." E.g., Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC, No. 11 Civ. 3327, 2013 WL 417406 at *6 (S.D.N.Y. Feb. 4, 2013).

### B.  Breach of the Agreement

The elements of a breach of contract claim in New York are "(1) the existence of an agreement, (2) adequate performance of

the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Moreover, under New York law "all contracts imply a covenant of good faith and fair dealing in the course of performance." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (2002). "New York law does not treat a breach of the covenant of good faith and fair dealing claim as one that is separate from a breach of contract claim where the claims are based on the same facts." Giller v. Oracle USA, Inc., No. 12-895, 2013 WL 646153, at *2 (2d Cir. Feb. 22, 2013) (summary order) (citing Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 80-81 (2d Cir. 2002)). Rather, breach of the implied duty of good faith is construed as "merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale del Lavoro, 961 F.2d 1052, 1056 (2d Cir. 1992).

At the center of the instant dispute is the Agreement's condition that, for the final commission payment to come due, Swiru must pay for the Dreamliner and take delivery of it.[3] "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a

---

[3] The Agreement makes clear that the two-part commission payment mechanism is intended to operate as a condition precedent, and not merely a payment schedule, thus: "For the avoidance of doubt . . . failure of SWIRU to accept delivery of the Aircraft relieves PEGASUS of its obligation to make the final payment above." (Compl. Ex. A.)

contract comes due." Restatement (Second) of Contracts § 224 (1981).[4]  New York law states that "a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." A.H.A. Gen. Constr., Inc. v. N.Y.C. Housing Auth., 92 N.Y.2d 20, 31 (1998) (quoting Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 87 (1933); Young v. Hunter, 6 N.Y. 203, 207 (1852)).  This is because a party may not "do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. (citations and internal quotation marks omitted).  This is known as the doctrine of preemption, and it "stands for the general proposition that 'a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition.'" Ferguson v. Lion Holding, Inc., 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007) (quoting Kooleraire Serv. & Installation Corp. v. Bd. of Educ. of the City of New York, 28 N.Y.2d 101, 106-07 (1971)).

   In this case, the Agreement that binds Defendant to pay a commission to Plaintiff specifically states that "failure of SWIRU to accept delivery of the Aircraft relieves PEGASUS of its

---

[4] The Second Restatement's definition of "condition" is interchangeable with what New York law refers to as a "condition precedent." See generally § 224 Reporter's Note.

obligation to make the final payment above." (Compl. Ex. A.) And Plaintiff acknowledges in the complaint that Swiru "had declined to purchase the Aircraft due to delays at Boeing," which had experienced "significant problems and delays in rolling out the Boeing 787 Dreamliner." (Compl. ¶¶ 24-25.) These facts tend to suggest that the condition precedent for the final commission payment never occurred, in which case Defendant would ordinarily be relieved of its obligation to make the payment.  Plaintiff nevertheless argues that Defendant cannot rely on the failure of the condition precedent (delivery of the Dreamliner to Swiru) to avoid its obligation to make the final commission payment, because Defendant (1) chose to release Swiru from its obligation to purchase the Dreamliner, and (2) entered a new transaction that provided additional profit for itself.

    The question is therefore whether, by restructuring its agreements with Swiru and Boeing, Defendant actively hindered the occurrence of the condition precedent such that the condition is deemed waived — in which case Defendant owes Plaintiff the final commission payment. See In re Bankers Trust Co., 450 F.3d 121, 127-28 (2d Cir. 2006) (per curiam) (discussing Amies v. Wesnofske, 255 N.Y. 156, 158-65 (1931)). "[A]ctive conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and

9

makes the promise absolute." <u>Amies</u>, 255 N.Y. at 163.  "Passive acquiescence," on the other hand, is not enough to cause the condition precedent to be waived. <u>Id.</u> at 165; <u>see</u> <u>Ferguson</u>, 478 F. Supp. 2d at 470.

 Drawing all reasonable inferences in Plaintiff's favor, as it must, the Court concludes that the complaint meets the threshold of stating a plausible claim to relief.  It alleges that Defendant refused to terminate Swiru's obligation to purchase the Dreamliner outright, and instead structured its dealings "so as to circumvent the Hallmark Commission Agreement and obtain an additional profit from Boeing." (Compl. ¶¶ 27-29.) Plaintiff has alleged facts that, if true, establish a plausible claim of breach of contract due to a breach of the implied covenant of good faith and fair dealing. <u>See</u> <u>Giller</u>, 2013 WL 646153 at *2 (recognizing "two paths to establish a breach of contract claim:  breach of the express terms or breach of implied contractual obligations" (citation and internal quotation marks omitted)).

 The Court's conclusion that the claim meets the 12(b)(6) plausibility threshold does not mean that Plaintiff is necessarily entitled to relief.  To determine whether Defendant's conduct constituted active hindrance (as Plaintiff alleges) or mere passive acquiescence (as Defendant insists),

10

the parties must establish a factual record. The case should therefore proceed to the discovery stage.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing

As set forth above, New York considers breach of the implied duty of good faith "merely a breach of the underlying contract." Fasolino Foods Co., 961 F.2d at 1056. Unless the claim for breach of the implied covenant is "based on allegations different than those underlying the accompanying breach of contract claim," two distinct causes of action cannot be maintained. Siradas v. Chase Lincoln First Bank, N.A., No. 98 Civ. 4028, 1999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999). Accordingly, a cause of action for breach of the implied covenant should be dismissed as duplicative if it arises from the same facts and seeks the same damages as a breach of contract claim. See, e.g., Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423, 426 (N.Y. App. Div. 2010).

In the instant case, Plaintiff pleads both a breach of contract and, separately, a breach of the implied covenant. The two causes of action do not plead distinct facts, and each seeks $369,375 in damages. At oral argument, Plaintiff's counsel conceded that the two claims were duplicative. (Oral Arg. Tr. at

17.)  Accordingly, the breach of the implied covenant count is dismissed with prejudice.

### D.  Unjust Enrichment

In addition to its contractual claims, Plaintiff brings a claim for unjust enrichment.  Plaintiff argues that it has adequately pled the requirements of New York law for unjust enrichment — that Defendant benefited at Plaintiff's expense, and that "equity and good conscience" require compensation. (Pl. Opp. at 13.)  Defendant moves to dismiss on the grounds that Plaintiff cannot recover in quasi-contract because the Agreement is an indisputedly valid contract that governs the parties' dealings.

It is axiomatic that "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." E.g., IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009) (citing Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)).  "[T]he threshold question is whether an enforceable contract exists that governs the subject matter underlying the unjust enrichment claim." St. John's Univ. v. Bolton, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010).  A valid contract between the parties, which relates to

the same subject matter as the unjust enrichment claim, bars the quasi-contract relief. See generally Morgan Stanley & Co. Inc. v. Peak Ridge Master SPC Ltd., No. 10 Civ. 8405, 2013 WL 1099059, at *11 (S.D.N.Y. Mar. 15, 2013) (collecting cases); Miller v. Schloss, 218 N.Y. 400, 407 (1916) (noting that quasi-contract "is an obligation which the law creates, in the absence of any agreement," and that it is defined by "[d]uty, and not a promise or agreement or intention of the person sought to be charged").

However, it is not always apparent at the pleading stage whether a contract both is valid and governs the subject matter of the dispute. See Vertex Constr. Corp. v. T.F.J. Fitness L.L.C., No. 10 Civ. 683, 2011 WL 5884209, at *4 (E.D.N.Y. Nov. 23, 2011) (noting that "because it is difficult to determine the validity or scope of the contract at the pleading stage, courts routinely reject arguments" to dismiss unjust enrichment claims as premature).  New York law therefore "permits the alternative pleading of breach of contract and unjust enrichment claims — and the survival of both claims at the motion to dismiss stage" — where the applicability of the contract is disputed. Icebox-Scoops v. Finanz St. Honor, B.V., 676 F. Supp. 2d 100, 114 (E.D.N.Y. 2009); see also Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc., No. 11 Civ. 5832, 2012 WL

3542196, at *11 (S.D.N.Y. Aug. 15, 2012) (collecting cases and denying motion to dimiss unjust enrichment claim); <u>IIG Capital LLC v. Arhipelago, L.L.C.</u>, 829 N.Y.S.2d 10, 14 (N.Y. App. Div. 2007). This is consistent with Rule 8(d) of the Federal Rules of Civil procedure, which permits inconsistent pleading. <u>See</u> <u>St. John's Univ.</u>, 757 F. Supp. 2d at 183-84 (refusing to dismiss the unjust enrichment cause of action because "[a]t the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims"); <u>Perfect Dental, PLLC v. Alstate Ins. Co.</u>, Nos. 04 Civ. 0586, 04 Civ. 0588, 2006 WL 2552171, at *1-2 (E.D.N.Y. Aug. 31, 2006).

In this case it is undisputed that the Agreement between the parties was valid as to the sale of the Dreamliner. Defendant urges that this mandates dismissal of the unjust enrichment claim, but Plaintiff argues that its claim may nevertheless lie if the Court determines that Defendant's restructured dealings with Swiru were not subject to the Agreement between Plaintiff and Defendant. In other words, it is not enough that they had a contract, if the <u>subject matter</u> of the contract does not extend to the negotiations between Defendant and Swiru.

The Court is again mindful of the fact that all reasonable inferences must be drawn in the non-movant's favor. Given that

there are almost no facts before the Court regarding the Swiru negotiations, it cannot yet say as a matter of law whether they are governed by the Agreement between Hallmark and AWAS.  The Court therefore concludes that it would be premature to dismiss the unjust enrichment cause of action at this time.

### E.   Subsidiary Liability

Defendant AWAS finally argues that Plaintiff cannot hold AWAS responsible for the acts of Pegasus, which it describes as a subsidiary.  It states that because "there is no allegation that AWAS assumed any of Pegasus's alleged contractual obligations to Hallmark, [no] basis exists to pierce the veil between the two corporations." (Mot. at 15.)

The complaint does not allege that AWAS and Pegasus are two corporations, such that piercing the corporate veil would be necessary.  Rather, the complaint articulates claims against "AWAS Aviation Services, Inc. f/k/a Pegasus Aviation Finance Company."  It alleges that AWAS purchased Pegasus in June 2007. (Compl. ¶ 3.)  Pegasus is also referred to as AWAS's "predecessor." (Id. ¶ 9.)  Finally, an exhibit to the complaint notes that the initial sales commission, which Pegasus owed to Plaintiff under the Agreement, was paid not by Pegasus but by AWAS in November 2007. (Compl. Ex. B. at 2.)

15

In its opposition papers, Plaintiff calls Defendant's claim that Pegasus is a distinct subsidiary of AWAS "entirely disingenuous" for two reasons. First, Plaintiff claims that AWAS "clearly holds itself out to be public as a combined entity with Pegasus," as evidenced by AWAS's website, which states that the "'combination of AWAS and Pegasus creates the world's third-largest aircraft lessor.'" (Pl. Opp. at 14-15 (citing Declaration of Stephen Hall ¶ 9).)  As Defendant points out, however, this evidentiary material is not properly before the Court at the 12(b)(6) stage.  Because Plaintiff did not plead it with the complaint, or attach it as an exhibit, it cannot be considered now. See Friedel, 210 F.3d at 83-84 (noting that "a district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss").

Second, Plaintiff supports its contention that AWAS and Pegasus are a combined entity with the fact that it was AWAS, not Pegasus, that paid to Plaintiff the first sales commission payment due under the Agreement between Plaintiff and Pegasus. (Pl. Opp. at 15.)  The implication is that AWAS's payment of Pegasus's obligation tends to show that AWAS assumed Pegasus's liabilities, and thus is the proper Defendant in this case. Unlike Plaintiff's first rationale above, this factual assertion

16

is supported by an exhibit to the complaint, see Compl. Ex. B. at 2, meaning that it can be considered now.

The Court declines to dismiss the complaint because of the confusion over Defendant's corporate structure. Plaintiff has met his burden of pleading facts that, if true, state a plausible claim that AWAS can be answerable for Pegasus's alleged breach. If discovery makes clear that AWAS is not the proper defendant in this action, then Plaintiff must amend the complaint to direct its claims against Pegasus.

### III.   Conclusion

For the foregoing reasons, count two of the complaint — breach of the covenant of good faith and fair dealing — is dismissed with prejudice. The remaining portions of Defendant's motion to dismiss are denied as set forth above. The parties are directed to comply with the Case Management Order filed contemporaneously with this Opinion.

**SO ORDERED.**

Dated:   New York, New York
         April 29, 2013

_____
John F. Keenan
United States District Judge